IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WINSTON & STRAWN, LLP, an Illinois limited liability partnership,<br><br>　　　　Plaintiff,<br><br><br><br>　　　　vs.<br><br><br><br>SALT LAKE TRIBUNE PUBLISHING COMPANY, LLC, a Utah limited liability company,<br><br>　　　　Defendant. | ORDER DENYING SALT LAKE TRIBUNE'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:04-CV-01182 PGC |

　　　　Plaintiff Winston & Strawn, LLP, and defendant Salt Lake Tribune Publishing Company, LLC, are involved in a dispute over legal fees.  Tribune Publishing engaged Winston & Strawn for legal work in a previous lawsuit before this court.  Although it paid $200,000 to Winston & Strawn, Tribune Publishing failed to pay the remaining balance of $336,477.22.  It now moves the court for summary judgment on the sole argument that since no attorney at Winston & Strawn had been admitted to practice law in the state, it should not have to fulfill its contract.  Tribune Publishing's motion is without merit and, accordingly, the court DENIES Tribune Publishing's motion for summary judgment (#39).

**BACKGROUND**

Summary judgment is appropriate only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[1]  The court must "view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party."[2]  But "the 'mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient' to create a genuine issue of material fact."[3]  Thus, to preclude summary judgment, "the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant."[4]  With these standards in mind, the court recites the relevant facts, as the facts of this case are quite simple.  Tribune Publishing hired Winston & Strawn to do some legal work in a previous civil case before the court.  It then paid some portion of what it owed to the firm, but declined to pay its full bill for services rendered.

Winston & Strawn is a large, well-known law firm with its primary headquarters in Chicago, and Salt Lake Tribune Publishing Company, L.L.C., is a Utah company which sought to acquire and oversee the newspaper bearing its moniker.  In 1997, Winston & Strawn first began legal work for Tribune Publishing's formation, assisting in negotiations which eventually became

---

[1]*Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

[2]*Id.* (citing *Plotke v. White*, 405 F.3d 1092, 1094 (10th Cir. 2005)).

[3]*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068 (10th Cir. 2005) (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)).

[4]*Id.*

part of the underlying civil suit in this court.  It also assisted Tribune Publishing in negotiations with AT&T, the owner of the newspaper before the civil suit, to purchase the assets of the *Salt Lake Tribune*.  The parties never executed or signed an engagement letter or other written agreement at that time.

After fruitless negotiations with AT&T, Tribune Publishing filed suit in the District of Utah against AT&T and others to prevent the sale of the newspaper assets and enforce its rights under an option agreement.  At that time, Winston & Strawn intended to be co-counsel along with a well-known Utah law firm, Jones, Waldo, Holbrook & McDonough, but believed that Jones Waldo would be initially responsible for all court filings and appearances.  Winston & Strawn then performed legal services in the civil suit including participating in drafting the initial complaint and other pleadings, performing substantial legal research, consulting with Tribune Publishing's representatives to determine tactics and strategy, drafting memoranda, motions, and other papers, attending depositions, and attending court hearings.  It performed all of these legal services in conjunction with Jones Waldo or another well-known Utah law firm, Bendinger, Crockett, Peterson and Casey, which took over as lead counsel after Jones Waldo was disqualified.

None of the Winston & Strawn attorneys involved in this case ever took the Utah bar or were admitted *pro hac vice* to this court.  When one of the parties filed a motion to disqualify Jones Waldo and Winston & Strawn, the Chicago firm did file a motion for leave to file a special appearance in the case for the limited purpose of responding to and defending that motion to disqualify.  The court granted that motion, allowing Winston & Strawn to specially appear.  On

the same day, the Clerk of the Court sent Winston & Strawn a letter and *pro hac vice* application. No written application was filed with the court. The court did not disqualify Winston & Strawn from its role as co-counsel, although it did disqualify Jones Waldo. The Bendinger firm then stepped in as lead counsel.

In its motion for summary judgment, Tribune Publishing provides statements from Winston & Strawn attorneys regarding their role in the civil suit. Specifically, Tribune Publishing states that one central attorney, Thomas Fitzgerald, has "no idea why [Winston & Strawn] did not enter an appearance or obtain" *pro hac vice* admission in the AT&T case.[5] It also states that another attorney, Lawrence Desideri*,* also has no explanation as to why Winston & Strawn "did not make a formal appearance . . . in the AT&T case when the initial complaint was filed, or seek" *pro hac vice* admission.[6]

Winston & Strawn disputes these points, pointing to the deposition answers given by both attorneys. Indeed, Mr. Fitzgerald, when called upon to answer why Winston & Strawn was not listed on the complaint, indicated that he did not know why, but also stated that "Jones Waldo was . . . historic counsel . . . . They were corporate counsel for a long period of time. They were based in Salt Lake."[7] Likewise, Mr. Desideri stated that "Jones Waldo was doing in-court stuff [which is why Winston & Strawn did not make an appearance on behalf of Salt Lake Tribune]."[8]

---

[5] Def's Mot. in Sup. of Summ. J., Docket No. 40, at 5 (Mar. 17, 2006).

[6] *Id*.

[7] *Id*. Ex. 1 (Fitzgerald Deposition), at 41:7-12.

[8] *Id*. Ex. 2 (Desideri Deposition), at 11:18-12:1.

Finally, Winston & Strawn presents the affidavit of Kenneth Kristl, another Winston & Strawn attorney and part of the litigation team for Tribune Publishing in the AT&T case. He states that the "strategic decision was made that Winston & Strawn would not seek *pro hac vice* admission for two reasons: (a) because of a perceived strategic advantage to having [Tribune Publishing] represented by local Salt Lake counsel against the out-of-state interests driving the sale of the *Tribune*, and (b) to keep Winston & Strawn "in reserve" to represent [Tribune Publishing] in other, future litigation that may arise out of the sale of the *Tribune*, or disputes under a Joint Operating Agreement between the *Tribune* and the *Deseret News*."[9] It is also undisputed that none of the Winston & Strawn attorneys ever represented to Tribune Publishing that they were admitted to practice in Utah, or that they would be admitted *pro hac vice* in Utah.

Tribune Publishing, in its reply, offers the declarations of Randy Frisch and Dominic Welch, two officers of the Tribune Publishing. Both of them state that they never had any conversations with any of the lawyers representing Tribune Publishing as "to whether or not they were or should or should not be admitted *pro hac vice* in the United States District Court for the District of Utah."[10] They also state that "until the term *pro hac vice* was raised in the context of this litigation, [they] had never heard that term [and do] not know the meaning of that term."[11]

## DISCUSSION

---

[9] Pla's Memo. in Opp. to Def's Mot. for Summ. J., Docket No. 42, Ex. 5, at 4 (Apr. 4, 2006) (Kristl Affidavit).

[10] Def's Reply Memo., Docket No. 48, Ex. A, B (April 24, 2006) (Welch and Frisch Declaration).

[11] *Id*.

Tribune Publishing argues that (1) Winston & Strawn engaged in the unauthorized practice of law in Utah, and (2) Winston & Strawn cannot be compensated for the work it performed in violation of Utah law.  Analyzing both Utah Code Ann. § 78-9-101 and DUCivR 83-1.1(d), Tribune Publishing argues that Winston & Strawn violated Utah law, and its violation constitutes sufficient grounds for summary judgment in this case.  Citing to numerous cases applying state law, Tribune Publishing argues that licensing statutes and requirements are to be upheld vigorously by this court.[12]  And since it is undisputed that no Winston & Strawn attorney ever sought admission to practice in Utah or sought *pro hac vice* admission, the argument goes, Winston & Strawn should not receive payment for legal services rendered.

Although it is clear that Winston & Strawn never became authorized to practice law in the state of Utah, Winston & Strawn has also provided evidence, to be viewed favorably by the court, that the decision not to seek admission was a strategic decision by Tribune Publishing and the Utah law firms involved.  And it is undisputed that Winston & Strawn was at all times affiliated or working in conjunction with local Utah counsel that *had been* admitted to the Utah bar and the Federal District of Utah.  This fact distinguished this case from all of the cases cited by Tribune Publishing; in these other cases, local counsel was not involved in planning or communication with the out-of-state attorney, nor did local counsel represent or file any of the

---

[12]*See, e.g.*, *LaFleur v. Teen Help*, 342 F.3d 1145, 1149-50 (10th Cir. 2003); *Board of Commissioners of the Utah State Bar v. Petersen*, 937 P.2d 1263, 1267-68 (Utah 1997); *Utah State Bar v. Summerhayes & Hayden*, 905 P.2d 867, 869-70 (Utah 1995); *Lozoff v. Shore Heights, Ltd.*, 362 N.E.2d 1047, 1048 (Ill. 1977); *Spivak v. Sachs*, 211 N.E.2d 329. 331 (N.Y. 1965).

documents written, researched, or discussed by the out-of-state attorney with the court.[13]

If the court views Winston & Strawn's offered evidence in its most favorable light, which it does for this summary judgment motion, it appears that Tribune Publishing and local Utah counsel actually decided that Winston & Strawn should not appear on the filings and before the court. It is true that Tribune Publishing provides two declarations, after the fact, by officers of Tribune Publishing stating that they never had conversations about *pro hac vice* admission. But Winston & Strawn has also provided affidavits showing evidence that Tribune Publishing and/or the local Salt Lake firms made tactical decisions not to have Winston & Strawn admitted during the pre-trial litigation phase. They now seek to use their own tactical decision as a reason for declining to pay fees. Additionally, Winston & Strawn never appeared on behalf of Tribune Publishing in court or on any filings and never held itself out to be admitted to practice in Utah. Moreover, Tribune Publishing paid Winston & Strawn two hundred thousand dollars without objecting to any of its counsel not being admitted to practice in Utah.

In light of all these facts, the motion is without merit. The court's first thought, on reading the motion, was that Tribune Publishing is raising a hyper-technicality to avoid paying a valid bill for legal services. However that may be, the present motion is meritless because

---

[13] *See LaFleur*, 342 F.3d at 1149-50 (upholding dismissal for failure to obtain local counsel); *Petersen*, 937 P.2d at 1263 (affirming jury verdict against *paralegal* for practicing law in Utah with no associated counsel); *Summerhayes & Hayden*, 905 P.2d at 871 (affirming trial court's grant of summary judgment against insurance adjusters not affiliated with local counsel); *Lozoff*, 362 N.E.2d at 1048 (affirming judgment that attorney licensed in another state and *not affiliated with local counsel* cannot recover for legal services); *Spivak*, 211 N.E.2d at 329-30 (same; especially noting that the attorney was not affiliated with local counsel because he tried to persuade the party to discharge her current local counsel and retain a different local counsel).

(among other reasons) Winston & Strawn has presented evidence supporting its theory that principles of equitable estoppel and waiver preclude Tribune Publishing from raising the *pro hac vice* question. Indeed, if anyone is entitled to summary judgment on this issue, it may well be Winston & Strawn.

## CONCLUSION

For the reasons given above, the court DENIES Tribune Publishing's motion for summary judgment (#39).

SO ORDERED.

DATED this 24th day of April, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge
